## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIE D. VALORA, | : | |
| Plaintiff, | : | |
| | : | No. _____ |
| vs. | : | |
| | : | |
| ST. ANDREW'S EPISCOPAL | : | |
| CHURCH | : | |
| Defendant. | : | JURY TRIAL DEMANDED |

### COMPLAINT

AND NOW COMES Plaintiff Julie D. Valora ("Plaintiff") by and through her attorneys Amy H. Marshall, Esquire and Babst, Calland, Clements and Zomnir, P.C. and files this Complaint against St. Andrew's Episcopal Church ("Defendant") in support thereof and avers as follows:

### JURISDICTION

1.      This Court has jurisdiction over this action pursuant to the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 et seq.

2.      This Court can exercise personal jurisdiction over Defendant because, among other things, Defendant continuously and systematically conducts business in the Commonwealth of Pennsylvania. Defendant employed Plaintiff in the Middle District of Pennsylvania and Defendant terminated Plaintiff in the Middle District of Pennsylvania.

3.      Defendant employed at least fifteen (15) employees meeting the definition of a "covered entity" under the Americans with Disabilities Act of 1990 pursuant to 42 U.S.C. § 12111.

## VENUE

4.      Venue is proper in this judicial district because the unlawful employment practice alleged in the Complaint was committed within the Middle District of Pennsylvania; Defendant regularly conducts business in the Middle District of Pennsylvania; Plaintiff would be employed in the Middle District of Pennsylvania, but for the unlawful employment practices and Defendant employs numerous individuals in the Middle District of Pennsylvania.  Accordingly, venue lies in the United States District Court for the Middle District of Pennsylvania.

## PARTIES

5.      Plaintiff is an adult individual, who at all times relevant to the allegation in this Complaint resided in Bellefonte, Centre County, Pennsylvania. At the time of her termination, Plaintiff was on an approved medical leave. Plaintiff avers that she is an eligible employee pursuant to the Americans with Disabilities Act.

6.      Defendant is a religious organization within Centre County, Pennsylvania, located at 208 West Foster Avenue, State College, Pennsylvania, 16801. The Defendant's main office is the Episcopol Diocese of Central Pennsylvania located at 101 Pine Street, Harrisburg, Pennsylvania, 17101.

7.      At all relevant times hereto, Defendant was Plaintiff's employer and was an employer within the meaning of the Americans with Disabilities Act.

8.      Defendant has employed more than fifteen (15) employees and Defendant is a "covered entity" within the meaning of the ADA 42 U.S.C. § 12111.

## ADMINISTRATIVE PROCEEDINGS

9.      Plaintiff has exhausted all administrative remedies.

10.     Plaintiff timely filed written charges alleging discrimination and retaliation with the Pennsylvania Human Relations Commission (PHRC) and the United States Equal Employment Opportunity (EEOC) on August 9, 2015.

11.     Plaintiff received a Notice of Right to Sue Letter from the EEOC on January 19, 2018.

12.     Plaintiff has filed this Complaint within ninety (90) days of receipt of the Notice of Right to Sue Letter from the EEOC and within two (2) years of the Plaintiff's dismissal from the PHRC.

## FACTUAL BACKGROUND

13.     On or around September, 2007, the Plaintiff commenced employment with St. Andrew's Episcopal Church ("Church").

14.     Plaintiff was employed as an Administrative Assistant with Defendant.

15.     Plaintiff was in treatment for anxiety since high school.

16.     Plaintiff was originally diagnosed with Anxiety Disorder in April, 2013.

17.     Plaintiff's diagnosis was revised in October, 2014 to included Panic Disorder without agoraphobia.

18.     Plaintiff's disorder substantially limited her ability to interact with others and to sit for long periods of time.  Plaintiff would become anxious, jittery and nervous.

19.     Plaintiff's job duties required her to interact with multiple people during the day, handling private matters with parishioners, speaking in front of large crowds as well as teaching two classes at the request of the Diocese.

20.    Due to Plaintiff's high level of competence recognized by the Diocese, Linda Arguedas requested Plaintiff to train other church employees in the Diocese to use her techniques and practices since her work was highly regarded.  Richard Wall requested Plaintiff to staff the Diocese Bishop search and the final Retreat for the search.

21.    The additional responsibilities given to Plaintiff increased her work load significantly and at times required her to travel out of the area and have overnight stays.

22.    Plaintiff handled private matters for the parishioners.

23.    Defendant asked Plaintiff to perform additional duties to include managing some of the facilities issues, such as scheduling the rooms and making sure the proper set-up was there.

24.    Beginning in April, 2013, Plaintiff had specific conversations with Father Richard Wall and fellow staff members, including Nurse Jerrilyn Kern, Financial Secretary Jill Ascah, Christian Education Director Robin Bagby, Treasurer Sue Stephenson, Youth Ministry Coordinator Darlene Nordoff, Parish Membership Secretary Gloria Meder and Sexton Scott Luzier, advising them of her medical issues.

25.    In April, 2013, Defendant specifically referred Plaintiff to an Employee Assistance Program (CIGNA) that provides services for employees of St. Andrews Episcopal Church.

26.    As a result of the CIGNA Program, Plaintiff received ten free sessions beginning on April 5, 2013 and Plaintiff continued to work during this time.

27.    Defendant specifically gave Plaintiff a second referral to the Employee Assistance Program (CIGNA) and Plaintiff was authorized to receive ten free sessions due to her recurring anxiety and panic attacks and she began said treatments on November 16, 2014.

28.     Halfway through the sessions with her therapist through the CIGNA Program, Plaintiff advised her therapist her employer terminated her even though her employer referred her for the assistance and treatment.

29.     Defendant was aware Plaintiff was receiving recurring treatment on a regular basis as a result of her medical issues.

30.     Plaintiff provided Defendant with the name of her doctor and therapist and gave Defendant permission to call them to discuss Plaintiff's condition.

31.     Defendant never contacted Plaintiff's medical providers and Defendant was specifically aware of Plaintiff's treatments.

32.     Plaintiff requested reasonable accommodations from Defendant so that she would be able to perform her job.

33.     The accommodations requested by Plaintiff were reasonable and did not create any hardship on Defendant as Defendant did not have to hire any additional employees during this time.

34.     In the fall of 2014, Defendant requested Plaintiff take on additional assignments, such as the Bishop Search, along with her regular duties.

35.     In the fall of 2014, Plaintiff's anxiety increased and her panic disorder was no longer controllable.

36.     The increased pressure of performing the additional assignments aggravated Plaintiff's condition and made it more difficult for Plaintiff to manage her medical condition.

37.     Plaintiff was continually given more work and increasingly more time consuming responsibilities.

38.     In early October, 2014, Plaintiff requested accommodations of occasionally working in a private room, taking short walks during long meetings and obtaining permission to

attend doctor appointments when necessary.  In fact, Father Wall is the one who suggested the short walks.

39.     Defendant provided limited accommodations to Plaintiff's requests from early October, 2014, until November 17, 2014.

40.     Plaintiff spoke with Nurse Kern on or around November 17, 2014, about her disability.

41.     Nurse Kern advised Plaintiff that she and Father Wall were concerned about her and requested she take a leave of absence.

42.     Nurse Kern did not have any information relative to whether Plaintiff's leave would be paid or unpaid.

43.     Defendant had no formal leave policy but clearly provided a leave to Plaintiff based on her medical condition and the need for accommodations.

44.     On November 17, 2014, Plaintiff was granted a medical leave of absence.

45.     On November 17, 2014, Father Richard Wall provided a leave to Plaintiff so that she could work on improving her health.

46.     On November 17, 2014, Father Richard Wall sent a text message to Plaintiff telling her "not to worry about work, and to focus on getting well."

47.     On December 1, 2014, while the Plaintiff was on an approved medical leave for Anxiety and Panic Disorder, Plaintiff was terminated from her employment with the Church.

48.     Defendant scheduled a meeting with Plaintiff for December 4, 2014.

49.     Plaintiff believed the reason for the meeting was to discuss her return to her job.

50.     Plaintiff entered the meeting at the church alone only to find four individuals in a room, namely, Father Wall, Nurse Kern, Attorney David Gaines and Junior Warden Koraly Perez Edgar.

51.     It was then on December 4, 2014, while the Plaintiff was on an approved medical leave, that Plaintiff was informed that she had been terminated effective December 1, 2014.

52.     Defendant's reason for terminating Plaintiff was that "it's not working out."

53.     At the time the Church's representatives and attorney met with Plaintiff on December 4, 2014, a severance agreement was offered to Plaintiff which included two (2) months of compensation.  The severance agreement included a requirement that Plaintiff waive her right to sue the Church.  As a result of the requirement, Plaintiff did not sign the severance agreement.

54.     The Church stated the reason for termination was a performance issue.

55.     Plaintiff had never been evaluated for her performance since the date she began employment in 2007.

56.     Plaintiff was never given any notice that her performance was deficient or that she had any performance issues.

57.     Plaintiff never received any feedback relating to any performance deficits and in fact, any feedback relative to Plaintiff's job duties was extremely positive.

58.     Defendant violated Section 5(a) of the Pennsylvania Human Relations Act, 43 P.S. 951-963.

## INTERFERENCE WITH AMERICANS WITH DISABILITIES ACT AND PENNSYLVANIA HUMAN RELATIONS ACT

### Count I

59.     Plaintiff incorporates by reference the averments of Paragraphs 1-25 of the Complaint as if the same were set forth in full.

60.     The ADA provides that a covered entity "shall not discriminate against a qualified individual with a disability.

61.     Defendant's conduct in terminating the Plaintiff is contrary to the Plaintiff's rights under the ADA inasmuch as the Defendant has interfered with the Plaintiff's ability to take the ADA/medical leave and Defendant refused to provide a reasonable accommodation.

62.     Defendant's conduct was with malice, and/or reckless indifference to Plaintiff's federally protected rights.

63.     As a direct and proximate result of the above-mentioned employment practices, Plaintiff was deprived of her job and has lost in common the form of back and front pay, fringe benefits, retirement contributions, medical insurance and lost future job opportunities for which Plaintiff seeks damages under the ADA.

WHEREFORE, Plaintiff demands judgment against the Defendant and damages in an amount that this Court and a jury deem fair and reasonable including, but not limited to, front pay, back pay from the date of the wrongful acts, equitable relief, compensatory damages, punitive damages, liquidated damages, prejudgment interest, post-judgment interest and reasonable attorney's fees including litigation expenses and the costs in this action.

## DISCRIMINATION/RETALIATION VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND THE PENNSYLVANIA HUMAN RELATIONS ACT

### Count II

64.     Plaintiff incorporates by reference the averments of Paragraphs 1-30 of the Complaint as if the same were set forth in full.

65.     Plaintiff was eligible for ADA leave.

66.     Defendant approved the Plaintiff for an ADA leave on November 17, 2014.

67.     Defendant was aware of the Plaintiff's medical condition, which required the ADA leave.

68.     For years Plaintiff suffered from anxiety and panic disorder.

69.     The Defendant was aware that the Plaintiff was suffering from anxiety and panic disorder.

70.     Defendant provided limited accommodation to Plaintiff from early October, 2014 through November 17, 2014.

71.     The Defendant terminated the Plaintiff's employment for "performance based issues."

72.     Defendant terminated Plaintiff effective December 1, 2014.

73.     Defendant retaliated against Plaintiff by discharging her six (6) weeks after she requested a reasonable accommodation for her disability.

74.     Defendant violated Section 5(d) of the Pennsylvania Human Relations Act, 43 P.S. 951-963.

75.     Defendant's motivation for terminating the Plaintiff was connected causally to Plaintiff's assertion of her rights under the Americans with Disabilities Act.

76.     As a direct and proximate result of the above-mentioned employment practices, Plaintiff was deprived of her job and has lost in common the form of back and front pay, fringe benefits, retirement contributions, medical insurance and lost future job opportunities for which Plaintiff seeks damages under the ADA.

WHEREFORE, Plaintiff demands judgment against Defendant and damages in an amount that this Court and a jury deem fair and reasonable including but not limited to, front pay, back pay from the date of the wrongful acts, equitable relief, compensatory damages,

prejudgment interest, post judgment interest and reasonable attorney's fees including litigation expenses, and the costs in this action.

Respectively submitted,

BABST, CALLAND, CLEMENTS AND
ZOMNIR, P.C.

By: /s/   Amy H. Marshall
   Amy H. Marshall, Esquire
   Attorney for Plaintiff
   Attorney ID: 74852
   330 Innovation Blvd., Suite 302
   State College, PA 16803
   Phone: (814) 867-8055
   Fax: (814) 867-8051
   amarshall@babstcalland.com

Date: April 18, 2018